IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NANCY ROBERTSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:11-cv-04299 |
| | § | |
| WILLIAMS-SONOMA STORES, INC. AND | § | |
| WILLIAMS SONOMA, INC., | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT

Mark J. Oberti
Texas Bar No. 00789951
Southern District ID No. 17918
OBERTI SULLIVAN LLP
723 Main Street, Suite 340
Houston, TX 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile
mark@osattorneys.com – E-mail

ATTORNEY-IN-CHARGE FOR PLAINTIFF
NANCY ROBERTSON

OF COUNSEL:

OBERTI SULLIVAN LLP
723 Main Street, Suite 340
Houston, TX 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile

ATTORNEYS FOR PLAINTIFF
NANCY ROBERTSON

## **TABLE OF CONTENTS**

I.      BACKGROUND .................................................................................. 1

II.    ARGUMENT AND ANALYSIS ........................................................ 2

      A.    $100,705.15 In Back-Pay And Benefits ................................. 2

      B.    $300,000.00 In Combined Compensatory Damages For Past Pain And Suffering And Mental Anguish And Exemplary Damages .................... 2

      C.    $227,875.00 In Front-Pay, Or More In the Court's Discretion ............................ 3

            1.    Legal Overview.................................................................. 3

            2.    Analysis................................................................................ 5

      D.    $147,820.00 In Attorneys' Fees .................................................. 7

            1.    Legal Overview.................................................................. 7

            2.    Analysis................................................................................ 9

                   a.    381.60 Hours Of Work That Oberti Sullivan LLP Seeks An Award For Are Reasonable.................................. 9

                   b.    The Hourly Rates Oberti Sullivan LLP Bases Its Proposed Award Upon Are Reasonable ................................ 10

                   c.    The *Johnson* Factors Do Not Appear To Justify An Upward Or Downward Adjustment To the Lodestar.................... 12

      E.    $8,965.64 In Taxable Costs .................................................. 13

      F.    $13.79 A Day In Prejudgment Interest From November 12, 2011 Until The Date Judgment Is Entered, And 5% Postjudgment Interest Until The Judgment Is Satisfied .................................................. 15

            1.    Prejudgment Interest .................................................. 15

            2.    Postjudgment Interest Of 5%.................................... 16

III.   CONCLUSION.................................................................................. 16

CERTIFICATE OF SERVICE .................................................................. 17

INDEX OF EXHIBITS.................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Allison v. Citgo Petroleum Corp.*,
   151 F.3d 402 (5th Cir. 1998) ................................................... 4

*Ancira Enter., Inc. v. Fischer*,
   178 S.W.3d 82 (Tex. App.–Austin 2005, no pet.) ................... 3

*Blum v. Stenson*,
   465 U.S. 886, 104 S. Ct. 1541 (1984) ..................................... 7

*Bode v. United States*,
   919 F.2d 1044 (5th Cir. 1990) ................................................ 8

*Brunnemann v. Terra Int'l Inc.*,
   975 F.2d 175 (5th Cir. 1992) ............................................. 3, 4

*Burns v. Texas City Refining, Inc.*,
   890 F.2d 747 (5th Cir. 1989) .................................................. 5

*Cook Children's Med. Ctr. v. New England PPO*,
   491 F.3d 266 (5th Cir. 2007) ................................................ 14

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*,
   482 U.S. 437, 107 S. Ct. 2494 (1987) ................................... 14

*Davis v. Commercial Union Ins. Co.*,
   892 F.2d 378 (5th Cir. 1990) ................................................ 14

*Deloach v. Delchamps, Inc.*,
   897 F.2d 815 (5th Cir. 1990) ............................................. 4, 5

*Deltatech Constr., LLC v. The Sherwin-Williams Co.*,
   No. Civ.A.04-2890, 2005 WL 3542906 (E.D. La. Nov. 3, 2005) ........................................... 9

*Donlin v. Philips Lighting North Am. Corp.*,
   581 F.3d 73 (3rd Cir. 2009) ................................................... 6

*Edwards v. Aaron Rents, Inc.*,
   482 F. Supp. 2d 803 (W.D. Tex. 2006) ................................... 4

*EEOC v. E.I. Du Pont de Nemours & Co.*,
   480 F.3d 724 (5th Cir. 2007) .................................................. 3

*El Apple I, Ltd. v. Olivas*,
370 S.W.3d 757 (Tex. 2012) .......................................................................... 7

*Fogleman v. ARAMCO*,
920 F.2d 278 (5th Cir. 1991) ........................................................................ 13

*Gilbane Bldg. Co. v. Empire Steel Erectors, L.P.*,
Civ. No. H-08-1707, 2010 WL 4791493 (S.D. Tex. Nov. 16, 2010) ...................................... 15

*Gotthardt v. National R.R. Passenger Corp.*,
191 F.3d 1148 (9th Cir. 1999) ........................................................................ 6

*Hukkanen v. Int'l Union of Operating Eng'rs, Hoisting & Portable Local No. 101*,
3 F.3d 281 (8th Cir. 1993) ............................................................................ 6

*Jackson v. Host Intern., Inc.*,
Nos. 09–51137, 10–50026, 2011 WL 2119644 (5th Cir. Feb. 1, 2011) ............................ 3, 5, 6

*Johnson v. Georgia Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ................................................................. 7, 8, 9, 12

*Julian v. City of Houston, Tex.*,
314 F.3d 721 (5th Cir. 2002) ......................................................................... 4

*Louisiana Power & Light Co. v. Kellstrom*,
50 F.3d 319 (5th Cir. 1995) ....................................................................... 7, 8

*MCN Energy Enters. Inc. v. Omagro de Colombia, LDC*,
98 S.W.3d 766 (Tex. App.–Fort Worth 2003, pet. denied) ............................................ 15

*Meacham v. Knolls Atomic Power Lab.*, 381 F.3d 56 (2d Cir. 2004),
*vacated on other grounds sub nom KAPL, Inc. v. Meacham*, 544 U.S. 957 (2005) ..................... 6

*Migis v. Pearle Vision, Inc.*,
135 F.3d 1041 (5th Cir. 1998) ........................................................................ 8

*Miles-Hickman v. David Powers Homes, Inc.*,
613 F. Supp. 2d 872 (S.D. Tex. 2009) ................................................................. 4

*Mitchell v. Sisters of Charity of Incarnate Word*,
924 F. Supp. 793 (S.D. Tex. 1996) .................................................................... 4

*Mota v. University of Texas Houston Health Science Center*,
261 F.3d 512 (5th Cir. 2001) ................................................................. 5, 6, 7, 14

*NME Hospitals, Inc. v. Rennels*,
   994 S.W.2d 142 (Tex. 1999) ............................................................................ 1

*Pacheco v. Mineta*,
   448 F.3d 783 (5th Cir. 2006) ........................................................................ 13

*Perez v. Pasadena Indep. Sch. Dist.*,
   165 F.3d 368 (5th Cir. 1999) ........................................................................ 14

*Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*,
   65 F.3d 562 (7th Cir. 1995) ............................................................................ 6

*Prater v. Commerce Equities Management Co., Inc.*,
   Civil Action No. H–07–2349, 2008 WL 5140045 (S.D. Tex., Dec. 8, 2008) ........................ 10

*Quality Dialysis, Inc. v. Adams*,
   NO. 13-05-086-CV, 2006 WL 1553353
   (Tex. App.–Corpus Christi June 8, 2006, no pet.) ............................................ 3

*Ray v. Iuka Special Mun. Separate Sch. Dist.*,
   51 F.3d 1246 (5th Cir. 1995) .......................................................................... 4

*Reneau v. Wayne Griffin & Sons, Inc.*,
   945 F.2d 869 (5th Cir. 1991) .......................................................................... 5

*Riley v. City of Jackson, Miss.*,
   99 F.3d 757 (5th Cir. 1996) ............................................................................ 8

*Saizan v. Delta Concrete Prods. Co., Inc.*,
   448 F.3d 795 (5th Cir. 2006) ...................................................................... 7, 8

*Salley v. E.I. DuPont de Nemours & Co.*,
   966 F.2d 1011 (5th Cir. 1992) ........................................................................ 13

*Sheets v. Yamaha Motors Corp. USA*,
   891 F.2d 533 (5th Cir. 1990) ........................................................................ 13

*Shore v. Federal Express Corp.*,
   777 F.2d 1155 (6th Cir. 1985) ........................................................................ 4

*Tollett v. City of Kemah*,
   285 F.3d 357 (5th Cir. 2002) .......................................................................... 9

*Walker v. City of Mesquite, Tex.*,
   313 F.3d 246 (5th Cir. 2002) .......................................................................... 8

*Wal-Mart Stores v. Davis,*
    979 S.W.2d 30 (Tex. App.–Austin 1998, pet. denied) ........................................ 3, 4

*Watkins v. Input/Output, Inc.,*
    531 F. Supp. 2d 777 (S.D. Tex. 2007) .................................................................... 13

**Statutes**

28 U.S.C. § 1920 .................................................................................................................... 14

28 U.S.C. § 1924 .................................................................................................................... 14

29 U.S.C. § 621 *et seq* ............................................................................................................. 1

TEX. FIN. CODE § 304.003(c) ................................................................................................ 16

TEX. FIN. CODE § 304.103 ..................................................................................................... 15

TEX. LAB. CODE § 21.001 *et seq.* ............................................................................................ 1

TEX. LAB. CODE § 21.258 ........................................................................................................ 2

TEX. LAB. CODE § 21.2585(d) .............................................................................................. 2, 3

**Rules**

FED. R. CIV. P. 54(d)(1) ......................................................................................................... 13

**Other Authorities**

TEX. PATTERN JURY INSTRUCTIONS 110.30, Comment, Front Pay (2003 ed.) .................. 3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NANCY ROBERTSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:11-cv-04299 |
| | § | |
| WILLIAMS-SONOMA STORES, INC. AND | § | |
| WILLIAMS SONOMA, INC., | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT

Plaintiff Nancy Robertson ("Robertson") files her Motion for Entry of Judgment, showing as follows:

## I.   BACKGROUND

1.   Robertson sued Williams-Sonoma Stores, Inc. and Williams Sonoma, Inc. (collectively "Williams-Sonoma" or Defendants) for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., and the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE § 21.001 *et seq*.

2.   On the evening of February 15, 2013, the jury returned a verdict in Robertson's favor on both claims, and awarded her damages for back-pay and benefits ($109,676.85), compensatory damages for past pain and suffering and mental anguish ($219,353.70), and exemplary damages ($2,574,145.00), for a total award of $2,903,175.50.

3.   Robertson elects her remedy under the TCHRA, rather than the ADEA.   As a result, she agrees she is not entitled to liquidated damages, as those are only available under the ADEA.

4.   Robertson now moves the Court to enter final judgment in her favor for:

a.   $100,705.15 in back-pay and benefits;

b.   $300,000.00 total for the combined amount of: (i) compensatory damages for past pain and suffering and mental anguish; and (ii) exemplary damages;

c.   $227,875.00 in front-pay, or more, in the Court's discretion;

d.   $147,820.00 in attorneys' fees;

e.   $8,965.64 in taxable costs;

f.   $13.79 a day in prejudgment interest on the $100,705.15 back-pay and benefits award for each day between November 12, 2011, and the date judgment is entered by the Court; and

g.   Postjudgment interest at the rate of 5% until Williams-Sonoma satisfies the judgment.

## II.   ARGUMENT AND ANALYSIS

### A.   $100,705.15 In Back-Pay And Benefits

5.   Prevailing claimants under the Texas Labor Code may recover lost back-pay and benefits.  TEX. LAB. CODE § 21.258.  The jury awarded Robertson $109,676.85.  However, in closing arguments, Robertson only asked for $100,705.15 in lost back-pay and benefits. Accordingly, Robertson asks the Court to award her only the $100,705.15 that she sought, rather than the slightly larger amount that the jury awarded.

### B.   $300,000.00 In Combined Compensatory Damages For Past Pain And Suffering And Mental Anguish And Exemplary Damages

6.   The TCHRA allows for recovery of compensatory damages for ". . . emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses[.]" TEX. LAB. CODE § 21.2585(d).  In 2011, the Fifth Circuit U.S. Court of Appeals affirmed a $300,000.00 award for such damages in an age discrimination case brought under the TCHRA.  *See, e.g.*, *Jackson v. Host Intern., Inc.,* Nos. 09–51137, 10–50026, 2011 WL 2119644,

at *8-9 (5th Cir. Feb. 1, 2011) (affirming $300,000.00 mental anguish award for age discrimination under the TCHRA).

7.      Prevailing claimants under the TCHRA are entitled to exemplary damages where a violation is shown by clear and convincing evidence to have been made with reckless disregard or malice to the plaintiff's rights under the law. *See, e.g., Quality Dialysis, Inc. v. Adams*, NO. 13-05-086-CV, 2006 WL 1553353, at *11 (Tex. App.–Corpus Christi June 8, 2006, no pet.) (affirming jury's award of exemplary damages against employer in an age discrimination case brought under the TCHRA); *Ancira Enter., Inc. v. Fischer*, 178 S.W.3d 82, 92-95 (Tex. App.–Austin 2005, no pet.) (same); *cf. EEOC v. E.I. Du Pont de Nemours & Co*., 480 F.3d 724, 733-34 (5th Cir. 2007) (upholding $300,000.00 exemplary damages award in a discrimination case brought under the Americans with Disabilities Act).

8.      The jury awarded Robertson a combined total of $2,793,498.70 in past pain and suffering and mental anguish and exemplary damages.  Under the TCHRA, the cap for these types of damages is $300,000.00 for an employer with more than 500 employees, such as Williams-Sonoma.  TEX. LAB. CODE § 21.2585(d)(4).  Accordingly, Robertson asks the Court to award her $300,000.00 in combined past pain and suffering and mental anguish and exemplary damages, without segregating specifically what amount constitutes damages for either one.

### C.      $227,875.00 In Front-Pay, Or More In the Court's Discretion

#### 1.      Legal Overview

9.      "Front pay refers to future lost earnings." *Wal-Mart Stores v. Davis*, 979 S.W.2d 30, 45 (Tex. App.–Austin 1998, pet. denied).  The TCHRA allows a plaintiff to recover front pay when a plaintiff shows that reinstatement is not feasible. TEX. PATTERN JURY INSTRUCTIONS 110.30, Comment, Front Pay (2003 ed.) (citing similar federal law); *cf. Brunnemann v. Terra Int'l Inc.*, 975 F.2d 175, 180 (5th Cir. 1992).  Generally, reinstatement is

3

the preferred equitable remedy for a discriminatory discharge. *Julian v. City of Houston, Tex.*, 314 F.3d 721, 729 (5th Cir. 2002). However, if reinstatement is not feasible, front pay will be awarded if it is consistent with the remedial purposes of the law. *Brunnemann*, 975 F.2d at 180.

10.     "[R]einstatement is not preferred over front pay when there is no vacancy in the desired position." *Mitchell v. Sisters of Charity of Incarnate Word*, 924 F. Supp. 793 (S.D. Tex. 1996) (quoting *Shore v. Federal Express Corp.*, 777 F.2d 1155 (6th Cir. 1985)). In other words, if reinstatement would require displacing or bumping an innocent employee from their job, then it is considered to be infeasible, and front-pay may be awarded instead of reinstatement. *See Ray v. Iuka Special Mun. Separate Sch. Dist.*, 51 F.3d 1246, 1254 (5th Cir. 1995). This point is relevant here, because the job Robertson had with Williams-Sonoma, assistant store manager of the Town and Country Pottery Barn store, is a one-person job. A person named Anthony McCormick currently fills that job (Terna Dep., Ex. 1 at 44-45).[1] Accordingly, there is no vacancy in the job Robertson had to reinstate her into. For that reason, reinstatement is not feasible, and front-pay should be awarded instead.

11.     "Front pay under the TCHRA is an equitable issue for the Court." *Miles-Hickman v. David Powers Homes, Inc.*, 613 F. Supp. 2d 872, 892 (S.D. Tex. 2009) (citing *Davis*, 979 S.W.2d at 45). *See also Edwards v. Aaron Rents, Inc.*, 482 F. Supp. 2d 803 (W.D. Tex. 2006) ("It is clear from legislative history, however, that front pay is an equitable remedy, and equitable remedies are awarded by the court.") (citing *Julian*, 314 F.3d at 729) (holding front pay is an equitable issue for the judge to determine); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 423 (5th Cir. 1998) (same); *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 817 (5th Cir. 1990) (equitable issue)).

---

[1]   This point was also established at trial.

12.     Calculations of front-pay cannot be totally accurate because they are prospective and necessarily speculative in nature.  *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991); *Deloach*, 897 F.2d at 822; *Burns v. Texas City Refining, Inc.*, 890 F.2d 747, 753 n. 4 (5th Cir. 1989). "The courts must employ intelligent guesswork to arrive at the best answer." *Deloach*, 897 F.2d at 822.

13.     In determining when the front-pay period ends, the Court generally considers the length of prior employment, the permanency of the position held, the nature of the work, the age and physical condition of the employee, possible consolidation of jobs, and other nondiscriminatory factors that could validly affect the possible post-discharge employment relationship.  *Reneau*, 945 F.2d at 871.

14.     In 2011, the Fifth Circuit affirmed a five-year front-pay award in an age discrimination case involving a 60-year-old plaintiff.  *See Jackson*, 2011 WL 2119644, at *7-8. Ten years before that, the Fifth Circuit affirmed a front-pay award that was entered by this very Court that appears to have substantially exceeded five-years.  *See Mota v. University of Texas Houston Health Science Center*, 261 F.3d 512, 527 (5th Cir. 2001).

## 2.     Analysis

15.     The evidence in this case supports a front-pay award of five years to Robertson, who is 65-years-old (Robertson Aff., Ex. 2).  Accordingly, Robertson seeks at least a five-year award based on her combined base salary ($41,200.00) and the total bonuses she received during her last fiscal year with Williams-Sonoma ($4,375.00), which translates to a total of $227,875.00.  This is an appropriate amount, especially considering that:

      a.     Robertson remains healthy and she expected to continue to work for Williams-Sonoma for as long as she is alive (Robertson Aff., Ex. 2);

      b.     Robertson is unlikely to find a substantially comparable job at age 65 (Robertson Aff., Ex. 2).  *See*  http://knowledge.wharton.upenn.edu/

article.cfm?articleid=2577 (Interview in September 2010 with Peter Cappelli, director of Wharton's Center for Human Resources, in which he states: "If you look at the research on older workers, you see an incredible amount of discrimination against them, bigger than race, bigger than gender. Older workers struggle to get hired."); and

c.   Presumably, Robertson would have received some raises in the next five years, but she did not include those in her front-pay calculation (Robertson Aff., Ex. 2).

16.   As mentioned, in 2011, the Fifth Circuit affirmed a five-year award on behalf of the plaintiff in a TCHRA-based age discrimination case in *Jackson v. Host Intern., Inc.*, and appears to have affirmed an even longer front pay award in 2001, in the *Mota* case. *See supra.* Robertson submits that it would be within the Court's discretion to award front-pay for more than five years, and that such an award would not be improper in this case. *See, e.g.*, *Hukkanen v. Int'l Union of Operating Eng'rs, Hoisting & Portable Local No. 101*, 3 F.3d 281, 286 (8th Cir. 1993) (holding that a ten-year front-pay award did not constitute an abuse of discretion); *see also Donlin v. Philips Lighting North Am. Corp.*, 581 F.3d 73, 88 (3rd Cir. 2009) (holding that district court did not abuse its discretion in awarding plaintiff front-pay for ten years); *Meacham v. Knolls Atomic Power Lab.*, 381 F.3d 56, 79 (2d Cir. 2004) (affirming front-pay awards of nine to twelve and one-half years), *vacated on other grounds sub nom KAPL, Inc. v. Meacham*, 544 U.S. 957 (2005); *Gotthardt v. National R.R. Passenger Corp.*, 191 F.3d 1148 (9th Cir. 1999) (affirming an eleven-year front-pay award); *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 574 (7th Cir. 1995) (holding that ten-year front-pay award did not constitute an abuse of discretion).

17.   Finally, it is worth noting that Williams-Sonoma's only apparent counter-argument against a substantial front-pay award is itself ironically premised on age discrimination. Specifically, in its Trial Brief, Williams-Sonoma argued that any front-pay award would have to be small because, "Plaintiff is already 65 years old, and could not

reasonably have been expected to work much longer." (Defendants' Trial Brief, Doc. 39 at 21 n. 10). The argument is premised on nothing more than an age-based stereotype. Even one of Williams-Sonoma's own witnesses recognized that point (Van Antwerp Dep., Ex. 3 at 16-17). It would not be improper for the Court to consider Williams-Sonoma's discrimination-based argument in determining the proper front-pay award in this case. *Cf. Mota*, 261 F.3d at 527 (defendant's conduct could be considered by the district court in determining the amount of front-pay).

### D.    $147,820.00 In Attorneys' Fees

#### 1.    Legal Overview

18.    Attorneys' fees awards under the TCHRA are governed by the lodestar method, and are determined by the trial court, not the jury. *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757 (Tex. 2012).

19.    Under the lodestar method, a court first determines the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating attorneys. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319 (5th Cir. 1995). Then, the Court must determine a lodestar by multiplying the reasonable hours by the reasonable hourly rates. *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 888, 104 S. Ct. 1541 (1984)).

20.    There is a strong presumption of the reasonableness of the lodestar amount. *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006). However, after calculating the lodestar, the court may adjust the lodestar amount upward or downward based upon its analysis of twelve factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The twelve *Johnson* factors are:

> (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to

7

> acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717–19.

21.     The Fifth Circuit reviews the district court's determination of reasonable hours and rate for clear error and its application of the *Johnson* factors for abuse of discretion.  *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).

22.     The most critical factor in determining an attorneys' fee award is the degree of success obtained. *Saizan*, 448 F.3d at 799.  Fee applicants bear the burden of establishing the appropriate hours and hourly rates and proving they exercised billing judgment. *Id.*; *see also Walker v. City of Mesquite, Tex.*, 313 F.3d 246, 251 (5th Cir. 2002); *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996).  Billing judgment requires documentation of the hours charged and of hours not charged because they were unproductive, excessive, or redundant. *Saizan*, 448 F.3d at 799.  The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment. *Id.*; *Walker*, 313 F.3d at 251.

23.     A fee applicant can only meet his burden by presenting evidence that is adequate for a court to determine what hours should be included in the reimbursement. *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990).  Thus, courts generally require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours. *Id*. If the documentation is vague or incomplete, a court may reduce the hours. *Kellstrom*, 50 F.3d at 324.

24. Reasonable hourly rates are determined by looking to the prevailing market rates in the community in which the district court sits. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).

### 2. Analysis

25. Based on the lodestar analysis, Oberti Sullivan LLP seeks $147,820.00 in attorneys' fees. This amount is supported by: (a) an analysis of the reasonable hours spent working on this case; and (b) the reasonable hourly rates. These factors, and the *Johnson* factors, are discussed below, and are supported by an affidavit from Oberti, as well as time records (Oberti Aff., Ex. 4; RocketMatter Report, Ex. 4-A).

a. 381.60 Hours Of Work That Oberti Sullivan LLP Seeks An Award For Are Reasonable

26. Robertson prevailed completely in this case. Therefore, the degree of success was 100%.

27. Oberti Sullivan LLP seeks an award based on 381.60 hours of work in this case. Oberti Sullivan LLP tracks its time through a software program called RocketMatter (Oberti Aff., Ex. 4). The RocketMatter report reflecting the 381.60 hours of work is attached as Exhibit 4-A. It is chronologically organized. It accurately reflects that Mark Oberti billed the vast majority of time to this case.

28. 381.60 hours of attorneys' time on this case is reasonable because: (a) Oberti Sullivan LLP prepared an unusually detailed 45-page Complaint in this case, that was supported by nine affidavits they had obtained from various witnesses, including former coworkers and customers (Doc. No. 1); (b) the case involved several rounds of written discovery; (c) sixteen depositions were taken in the case – twelve by Robertson and four by Williams-Sonoma; (d) Oberti Sullivan LLP prepared substantial pretrial materials in addition to the Joint Pretrial Order,

including a 50-page Pretrial Statement of Facts and a 24-page Pretrial Brief (Doc. Nos. 29 and 30); and (e) the trial required Oberti Sullivan LLP to prepare examination and cross-examination outlines for the sixteen witnesses who testified live at trial, and to spend substantial time working on designations and objections related to the two witnesses' testimony that was presented to the jury by video deposition.

29.     Oberti Sullivan LLP has shown billing judgment by excluding some attorney time that is not reflected on the RocketMatter report. For example, Mark Oberti's partner, Ed Sullivan, attended the mediation and the pretrial conference in this case.  Arguably, Oberti alone could have handled both of those particular tasks, so Sullivan's time was excluded.  *See, e.g.*, *Prater v. Commerce Equities Management Co., Inc.*, Civil Action No. H–07–2349, 2008 WL 5140045, at *7 (S.D. Tex., Dec. 8, 2008) (decision by Judge Lee Rosenthal issued after mediation in which she awarded Steele Sturm PLLC $117,553.04 in attorneys' fees in a FLSA case even though they never took a single deposition in the case and the case did not go to trial, but did cut the requested award because one lawyer, rather than two, could have handled the mediation).

30.     In conclusion, 381.60 hours to do all that was done in this case is very reasonable. One can only imagine the amount of time that Williams-Sonoma's lawyers have charged them for in this case.

b.     The Hourly Rates Oberti Sullivan LLP Bases Its Proposed Award Upon Are Reasonable

31.     Mark Oberti spent the vast majority of time on this case (Ex. 4-A).  His rate on this case was $400.00 per hour.  Ed Sullivan spent a little time on this case.  His rate on this case was $375.00 per hour.  Matt Yezierski also spent a little time on this case.  His rate on this case was $175.00 per hour.

32.     Mark Oberti's hourly rate of $400.00 is reasonable.  Oberti has practiced since 1994, is Board Certified in Labor and Employment law, has handled hundreds of employment cases (albeit mostly for employers, not employees), and speaks regularly at both local and national continuing legal education seminars, as is accurately reflected on his biography, which is located on the Internet at http://www.osattorneys.com/about_mark.html.[2]  Prior to starting Oberti Sullivan LLP in June 2010, Oberti spent more than twelve-years at Seyfarth Shaw LLP, a national law firm specializing in labor and employment law.  At the time he left Seyfarth Shaw, his hourly rate was already above $400.00 per hour, and other lawyers at Seyfarth Shaw's Houston office with similar or less levels of experience, knowledge, and skill charged clients hourly rates at or above $400.00 per hour.  In addition, since starting Oberti Sullivan LLP, Oberti has charged numerous clients – both employers and employees – rates of $400.00 or more.  Accordingly, his hourly rate on this case is reasonable.

33.     Ed Sullivan's hourly rate of $375.00 is also reasonable.  Sullivan has practiced since 1997, is Board Certified in Labor and Employment law, has handled hundreds of employment cases (albeit mostly for employers, not employees), and has spoken at many continuing legal education seminars, as is accurately reflected on his biography, which is located on the Internet at http://www.osattorneys.com/about_ed.html.  Prior to starting Oberti Sullivan LLP in June 2010, Sullivan spent approximately eight-years at Seyfarth Shaw LLP.  At the time he left Seyfarth Shaw, his hourly rate was $375.00 per hour, and other lawyers at Seyfarth Shaw's Houston office with similar or less levels of experience, knowledge, and skill charged clients hourly rates at or above $375.00 per hour.  In addition, since starting Oberti Sullivan LLP,

---

[2]   There is a tab on Oberti's biography entitled "Mark Oberti's Recent Presentations," that lists Oberti's recent and upcoming presentations to continuing legal education seminars.

Sullivan has charged numerous clients – both employers and employees – rates of $375.00 or more.  Accordingly, his hourly rate on this case is reasonable.

34.     Finally, Matt Yezierski's hourly rate of $175.00 per hour is reasonable.  Yezierski graduated from law school in 2011.  Yezierski is a competent and capable Associate lawyer, and big firms in Houston routinely charge more for a lawyer of his experience, knowledge, and skill.  His biography is located on the Internet at http://www.osattorneys.com/about_matt.html.

35.     In sum, based on the lodestar analysis, an attorneys' fees award in this case of $147,820.00 is appropriate.

        c.       <u>The *Johnson* Factors Do Not Appear To Justify An Upward Or Downward Adjustment To the Lodestar</u>

36.     Robertson does not seek an upward adjustment to the lodestar amount of $147,820.00 based on the *Johnson* factors.   Robertson asserts there should be no downward adjustment either.  The *Johnson* factors are applied below:

        a.       The time and labor required for the litigation:  See above.

        b.       The novelty and difficulty of the questions presented:  The case presented no novel or difficult questions.

        c.       The skill required to perform the legal services properly:  Only average skill was required.

        d.       The preclusion of other employment by the attorney due to acceptance of the case:  Not applicable.

        e.       The customary fee:  This matter was handled on a pure contingent fee basis, which is customary, although many firms charge clients their costs, or some other small retainer, neither of which Oberti Sullivan LLP did in this case.

        f.       Whether the fee is fixed or contingent:  Oberti Sullivan LLP took this case on a pure contingent fee basis.  Accordingly, the firm has, as of this day, not made a penny on this case, and has not charged Robertson a single penny either.

g. Time limitations imposed by the client or the circumstances: Not applicable.

h. The amount involved and the result obtained: Robertson prevailed on her age discrimination claims under both federal and state law, and will likely recover the maximum amount possible, given the damages caps on compensatory and punitive damages. The result obtained was thus total victory and maximum damages.

i. The experience, reputation and ability of the attorneys: Nineteen years experience, with good reputation and ability.

j. The "undesirability" of the case: The case was very desirable, except for the fact that Robertson was a fairly low wage earner, so the back-pay damages model barely reached six figures.

k. The nature and length of the professional relationship with the client: Began relationship on May 5, 2011 (Ex. 4-A), and the relationship continues to this day. Robertson has been a truly wonderful and helpful client.

l. Awards in similar cases: The proposed attorneys' fees award of only $147,820.00 would appear to be low, compared to other similar cases that were tried in the Houston area in the last ten years. *See, e.g., Watkins v. Input/Output, Inc.*, 531 F. Supp. 2d 777, 789 (S.D. Tex. 2007) (awarding prevailing plaintiff in an age discrimination case $336,010.50 in attorneys' fees).

**E. $8,965.64 In Taxable Costs**

37. Federal Rule of Civil Procedure 54(d)(1) provides for an award of costs "to the prevailing party unless the court otherwise directs." FED. R. CIV. P. 54(d)(1). Furthermore, the Fifth Circuit strongly presumes that courts will award costs to the prevailing party. *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1017 (5th Cir. 1992) (citing *Sheets v. Yamaha Motors Corp. USA*, 891 F.2d 533, 539 (5th Cir. 1990)). A losing party's good faith is alone insufficient to justify a court's denial of costs to the prevailing party. *Pacheco v. Mineta*, 448 F.3d 783, 795 (5th Cir. 2006). To determine who is a prevailing party, a court must look at the case as a whole. *Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991). Successful recovery on every issue is not required in order to be deemed a prevailing party. *Id.*

38.     Title 28 U.S.C. § 1920 identifies recoverable costs:

A judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920 (2006).

39.     A court may decline to award the costs listed in the statute, but may not award costs omitted from the list. *Cook Children's Med. Ctr. v. New England PPO*, 491 F.3d 266, 274-75 (5th Cir. 2007) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc*., 482 U.S. 437, 444-45, 107 S. Ct. 2494 (1987)).

40.     Before a court taxes a bill of costs, the party claiming the cost shall attach an affidavit that such amount is correct, was necessarily incurred during the case, and the services which gave rise to the cost were actually and necessarily performed.  28 U.S.C. § 1924 (2006). If a party does not set out costs with sufficient particularity, a court may disallow them. *See Davis v. Commercial Union Ins. Co.*, 892 F.2d 378, 385 (5th Cir. 1990).

41.     In this case, Robertson seeks costs of $8,965.64 for standard items that are included in the costs recoverable under 28 U.S.C. § 1920 (Ex. 4-B), and the costs for her copies of her trial exhibits and exhibit boards.  *Perez v. Pasadena Indep. Sch. Dist*., 165 F.3d 368, 374 (5th Cir. 1999) (costs for copies of trial exhibit books were recoverable).  Robertson does not seek recovery of her costs for her $1,800.00 mediation fee, videotapes or DVDs of depositions, or private process services, as none of those costs are recoverable under 28 U.S.C. § 1920. *See Mota*, 261 F.3d at 530.

**F.** **$13.79 A Day In Prejudgment Interest From November 12, 2011 Until The Date Judgment Is Entered, And 5% Postjudgment Interest Until The Judgment Is Satisfied**

**1.** **Prejudgment Interest**

42.     For state law claims that result in a federal court judgment, state law controls. *Gilbane Bldg. Co. v. Empire Steel Erectors, L.P.*, Civ. No. H-08-1707, 2010 WL 4791493 (S.D. Tex. Nov. 16, 2010).  Under Texas Finance Code 304.104, prejudgment interest accrues on the amount of judgment during the period beginning on the earlier of the 180th day after the date the defendants receive written notice of claim or the date the suit is filed, and ending on the day preceding the date the judgment is rendered.  It is computed as simple interest, calculated on the principal amount.  It does not compound.  The rate is the same as postjudgment interest.  TEX. FIN. CODE § 304.103.  A plaintiff cannot recover prejudgment interest on an award of future damages or punitive damages.  A "claim" is a demand for compensation or an assertion of a right to be paid.  *MCN Energy Enters. Inc. v. Omagro de Colombia, LDC*, 98 S.W.3d 766 (Tex. App.– Fort Worth 2003, pet. denied).

43.     On May 16, 2011, Robertson's lawyer sent Williams-Sonoma's General Counsel a letter by e-mail setting forth her claim (Letter from Oberti to Jaffe of 05/16/2011, Ex. 5).  180 days after that is November 12, 2011.  The lawsuit was filed December 9, 2011.  So, the prejudgment interest rate on the back-pay amount of $100,705.15 starts on November 12, 2011, and runs at the rate of $13.79 per day (the daily amount of 5% simple interest on $100,705.15) until judgment is entered.

44.     Note that it would be proper to award interest on the compensatory damages for past pain and suffering and mental anguish, but Robertson does not seek such an award, because she does not want the $300,000.00 cap applied to any specific amount of either the compensatory damages or exemplary damages award.

15

### 2.   Postjudgment Interest Of 5%

45.   The postjudgment rate is the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation.  TEX. FIN. CODE § 304.003(c)(1).  There is a 5% floor and 15% cap.  TEX. FIN. CODE § 304.003(c)(2)-(3).  The current prime rate is 3.25%, so in Texas, the pre- and post-judgment rate is 5% (the floor).  Accordingly, Plaintiff seeks postjudgment interest of 5% from the date the Court enters judgment until Defendants satisfy the judgment.

## III.   <u>CONCLUSION</u>

46.   Robertson respectfully moves the Court to enter final judgment in her favor for:

   a.   $100,705.15 in back-pay and benefits;

   b.   $300,000.00 total for the combined amount of: (i) compensatory damages for past pain and suffering and mental anguish; and (ii) exemplary damages;

   c.   $227,875.00 in front-pay, or more, in the Court's discretion;

   d.   $147,820.00 in attorneys' fees;

   e.   $8,965.64 in taxable costs;

   f.   $13.79 a day in prejudgment interest on the $100,705.15 back-pay and benefits award for each day between November 12, 2011, and the date judgment is entered by the Court; and

   g.   Postjudgment interest at the rate of 5% until Williams-Sonoma satisfies the judgment.

47.   A proposed Final Judgment is filed contemporaneously with this motion.

48.   Robertson also seeks all other relief to which she is justly entitled, as determined by this Honorable Court.

Respectfully submitted,

OBERTI SULLIVAN LLP

By:   s/ Mark J. Oberti
        Mark J. Oberti
        State Bar No. 00789951
        Southern District ID. No. 17918
        723 Main Street, Suite 340
        Houston, TX 77002
        (713) 401-3555 – Telephone
        (713) 401-3547 – Facsimile
        mark@osattorneys.com – Email

        ATTORNEY-IN-CHARGE FOR PLAINTIFF
        NANCY ROBERTSON

OF COUNSEL:

OBERTI SULLIVAN LLP
723 Main Street, Suite 340
Houston, TX 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile

ATTORNEYS FOR PLAINTIFF
NANCY ROBERTSON

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon the counsel of record listed below by the Southern District of Texas ECF method or by certified mail, return receipt requested on the 21st day of February 2012.

Tracey Kennedy
Robert Mussig
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071

Christopher Lynn Ashby
Ashby LLP
1010 Lamar Street, Suite 1200
Houston, TX 77002

s/ Mark J. Oberti
Mark J. Oberti

17

## <u>INDEX OF EXHIBITS</u>

The following exhibits are incorporated into the preceding motion as if set out verbatim.

| DESCRIPTION | EXHIBIT |
|---|---|
| Excerpts from Lynn Terna's Deposition | 1 |
| Nancy Robertson's Affidavit | 2 |
| Excerpts from Jeff Van Antwerp's Deposition | 3 |
| Mark Oberti's Affidavit<br><br>RocketMatter billing report<br><br>Costs break-out | 4,<br><br>4-A<br><br>4-B |
| Letter from Oberti to Jaffe of May 16, 2011 | 5 |