IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NANCY ROBERTSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| versus | § | CIVIL ACTION NO. H-11-4299 |
| | § | |
| WILLIAMS-SONOMA STORES, INC. | § | |
| AND WILLIAMS-SONOMA, INC., | § | |
| | § | |
| Defendants. | § | |

## FINAL JUDGMENT

Pending before the Court is the Plaintiff's Motion for Entry of Judgment (**Instrument No. 57**) and the Defendants' Renewed Motion for Judgment as a Matter of Law, Alternative Motion for New Trial, Alternative Motion to Amend Judgment (**Instrument No. 58**).

### I.

On the 11th of February, 2013, the above-styled and numbered case came on for trial. Both sides appeared and announced ready for trial, and the case was tried to a jury, one having been timely requested. At the conclusion of Plaintiff Nancy Robertson's case in chief, Defendants Williams-Sonoma Stores, Inc. and Williams-Sonoma, Inc. moved for judgment as a matter of law as to Plaintiff's claims. Fed. R. Civ. P. 50(a). The Court denied Defendants' motion. The case was submitted to the jury on February 15, 2013. The jury questions and answers were as follows:

## QUESTION NO. 1

Do you find, by a preponderance of the evidence, that Williams-Sonoma terminated Plaintiff because of Plaintiff's age, in violation of the ADEA?

Answer "Yes" or "No."

_____YES_____

Please proceed to Question No. 2.

## QUESTION NO. 2

Do you find, by a preponderance of the evidence, that age was a motivating factor in Williams-Sonoma's decision to terminate Plaintiff, in violation of the TCHRA?

Answer "Yes" or "No."

_____YES_____

If you have answered "Yes" to either Question No. 1 or Question No. 2, or both, please proceed to Question No. 3. If you have answered "No" to both Question No. 1 and Question No. 2, do not answer any more questions. Please sign and date the Certificate and return it to the Court.

## QUESTION NO. 3

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Plaintiff for her damages, if any?

Answer in dollars and cents, if any:

Back pay and benefits:

$109,676.85_____

Pain and suffering and mental anguish in the past:

$219,353,70_____

2

Pain and suffering and mental anguish in the future:

$0 _____

Please proceed to Question No. 4.

## QUESTION NO. 4

If you have answered "Yes" to Question No. 1, please answer the following question.

Was any violation of the ADEA by Williams-Sonoma "willful"?

Answer "Yes" or "No."

_____ YES _____

Please proceed to Question No. 5.

## QUESTION NO. 5

If you have answered "Yes" to Question No. 2, please answer the following question.

Do you find, by clear and convincing evidence, that Williams-Sonoma engaged in the discriminatory practice that you have found in answer to Question No. 2 with malice or with reckless indifference to the right of Plaintiff to be free from such practices?

Answer "Yes" or "No."

_____ YES _____

If you have answered "Yes" to Question No. 5, please proceed to Question No. 6. If you have answered "No" to Question No. 5, do not answer any more questions. Please sign and date the Certificate and return it to the Court.

3

## QUESTION NO. 6

What sum of money, if any, if paid now in cash, should be assessed against Williams-Sonoma and awarded to Plaintiff as exemplary damages, if any, for the conduct found in response to Question No. 5?

Answer in dollars and cents, if any:

$2,574,145.00_____

### II.

Defendants have filed a Renewed Motion for Judgment as a Matter of Law, Alternative Motion for New Trial, Alternative Motion to Amend Judgment. Defendants' Motion is **GRANTED in part and DENIED in part. (Instrument No. 58)**. Defendants' motion for judgment as a matter of law or a new trial is DENIED. Defendants' motion to set aside exemplary damages is DENIED. Defendants' motion related to front pay damages is GRANTED in part and DENIED in part as follows:

### III.

Awards of front pay are equitable in nature. TEX. LAB. CODE § 21.258; *Cox & Smith Inc. v. Cook*, 974 S.W. 2d 217, 228 (Tex. App.-San Antonio 1998, pet. denied). "[F]ront pay is a prospective remedy that estimates the damage plaintiff will continue to suffer after the date of final judgment as a result of the wrongdoing." *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 490-91 (5th Cir. 2007). "Reinstatement generally is preferable to an award of front pay," so district courts must articulate reasons for finding reinstatement infeasible and awarding front pay in lieu of reinstatement. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 489 n.27 (5th Cir. 2001). The award should be reduced by potential future earnings. *Id.* at 489. The court "must consider [a plaintiff's] failure to

mitigate . . . damages in determining the extent to which, if at all, front pay is appropriate." *Id.* (internal quotation omitted).

"Calculations of front pay cannot be totally accurate because they are prospective and necessarily speculative in nature." *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991); *see also Jackson v. Host Int'l, Inc.*, 426 F. App'x 215, 223 (5th Cir. 2011) (interpreting front pay under the TCHRA). "A court may deny front pay because of insufficient evidence," but wage information is generally all that courts require for calculating a front pay award. *Reneau*, 945 F.2d at 870 (finding that evidence of the plaintiff's pre- and post-termination earnings constitute substantial support for calculating a front pay award). In determining when the front pay period ends, courts generally consider the length of prior employment, the permanency of the position held, the nature of the work, the age and physical condition of the employee, possible consolidation of jobs, and other nondiscriminatory factors that could validly affect the possible post discharge employment relationship. *Id.* at 869. "[A] plaintiff's failure to mitigate his damages will usually reduce or perhaps eliminate his entitlement to front pay." *Hansard v. Pepsi-Cola Metro. Bottling Co., Inc.*, 865 F.2d 1461, 1470 (5th Cir. 1989). "[T]he affirmative defense of failure to mitigate lies entirely with the defendant, including the burden to establish the amount that the front pay award should be tolled or reduced." *Jackson*, 426 F. App'x at 224.

"The selection between reinstatement and front pay is discretionary with the trial court so long as the relief granted is consistent with the purposes of the ADEA." *Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 180 (5th Cir. 1992). Nevertheless, reinstatement is by far the preferred remedy in an ADEA case. *Palasota*, 499 F.3d at 489. "As a result, the district court must consider and adequately articulate its reasons for finding reinstatement to be infeasible and for considering an award of front pay instead." *Id.* (citing references omitted). Particularly relevant is whether positions

currently exist comparable to the plaintiff's former position and "whether reinstatement would require and employer to displace an existing employee." *Id.*

Here, Defendants employ only one assistant store manger in each Pottery Barn store, and that position is currently occupied at Plaintiff's former store. (Instrument No. 57-1 at 2-3). Therefore, Plaintiff argues, and Defendants do not contest, that reinstatement is not feasible. The Court therefore finds that reinstatement is not appropriate and turns to the issue of front pay.

Defendants accuse Plaintiff of "misconduct" for presenting her request for front pay in a post-trial brief and affidavit. (Instrument No. 58 at 11). However, the parties stipulated that the Court would decide front pay after trial. (Instrument No. 32 at 10). At trial, Plaintiff asked the Court how it would like to rule on the issue of front pay, and the Court requested briefing on the issue. Defendants did not object or request a hearing on front pay, and they have now waived the issue. If Defendants wished to inquire about the issue of front pay, they should have done so during discovery. It is appropriate for the Court to determine the issue of front pay now.

Based on the *Reneau* factors, the Court finds that Plaintiff should be awarded two years of front pay, totaling $91,150.00, reflecting her annual salary of $41,200.00 and average bonus of $4,375.00. *See Reneau*, 945 F.2d at 869. Plaintiff had worked at Pottery Barn for almost ten years at the time she was terminated and her position was both stable and permanent. Although some of her work required lifting heavy objects and furniture, Plaintiff is in good health and there is evidence that she "enjoy[s] . . . vigorous physical activity." (Instrument No. 57-2 at 2).

Additionally, although Defendants argue that Plaintiff failed to mitigate her damages, the jury's verdict indicates that the jury did not accept this argument, and the same evidence applies to the issue of front pay. Furthermore, although Defendants argue that Plaintiff failed to present testimony on her inability to find a job in the future, the Court notes that it is Defendants' burden to

establish how much front pay should be reduced based on failure to mitigate damages. *Jackson*, 426 F. App'x at 224. The Court finds that Plaintiff is unlikely to find a comparable job within the next two years and declines to reduce the front pay award based on a failure to mitigate.

However, Plaintiff is sixty-five years old, which is the standard age of retirement, and there is no credible evidence beyond Plaintiff's own affidavit to establish how long she could reasonably continue working. This counsels against giving Plaintiff five years of front pay, as she requests. The Court therefore finds that two years of front pay is the appropriate award. The Court awards Plaintiff $91,150.00 in front pay.

## IV.

Attorney's fees are awarded in accordance with the methodology outlined by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (en banc). First, it must be clear that the Plaintiff is the prevailing party, for in order to be eligible for a fee award, the Plaintiff must have prevailed on a significant claim that directly benefits the Plaintiff. *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566 (1992). It is not necessary, however, that Plaintiff prevail on the "central issue" of the case to be considered the prevailing party. *Texas State Teachers Ass'n v. Garland Ind. Sch. Dist.*, 489 U.S. 782, 791, 109 S.Ct. 1486 (1989).

In this case, the jury found that Defendants willfully terminated Plaintiff because of Plaintiff's age, in violation of the ADEA. (Instrument No. 52 at 2, 5). The jury further found that age was a motivating factor in Defendants' decision to terminate Plaintiff, in violation of the TCHRA, and that Defendants acted with malice or reckless indifference. (Instrument No. 52 at 3, 6). The jury awarded Plaintiff both compensatory and exemplary damages. (Instrument No. 52 at 2, 7). Accordingly, the Court finds that Plaintiff is clearly the prevailing party.

Next we must turn to the methodology required to calculate the appropriate attorneys' fee. The lodestar approach conceived in *Johnson* is favored generally because it lends a degree of objectivity and certainty to the assessment of fees. *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149-50 (11th Cir. 1993). The basis of lodestar accounting involves multiplying the number of hours reasonably expended by the applicable hourly market rate for legal services. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933 (1983). In addition, the Fifth Circuit requires an analysis of the "*Johnson* factors" in each case before fees can be calculated. *See, e.g., Nisby v. Court of Jefferson Cty.*, 798 F.2d 134, 137 (5th Cir. 1986) (reversing award because court did not address "applicability of each of the *Johnson* factors").

The "*Johnson* factors" include (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and result obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the clients; and (12) awards in similar cases. These factors may bear on the market rate or on whether the hours were reasonably spent and may be a basis for adjusting the lodestar. *Hensley at* 434.

Utilizing these factors, the Court may make downward adjustments, e.g. for incomplete success; *see Pressley v. Haeger*, 977 F.2d 295, 298 (7th Cir. 1992) (prohibiting an award of fees on losing claims) and in rare cases, upward adjustments, e.g. based on exceptional results; *see Shipes v. Trinity Industries*, 987 F.2d 311, 322 (5th Cir. 1993). A failure to consider the *Johnson* factors constitutes an abuse of discretion. *Riddell v. National Democratic* Party, 712 F.2d 165 (5th Cir. 1983).

Fed. R. Civ. P. 54(d)(2)(A) provides that claims for attorneys' fees are to be made by motion unless such fees are an element of damages that have been proved at trial. In this case Plaintiff has filed a motion for award of attorney's fees in accordance with the Court' order.

Plaintiff presented evidence in this case that Mark Oberti's hourly rate of $400.00 is reasonable. Oberti has practiced since 1994, is Board Certified in Labor and Employment law, has handled hundreds of employment cases (albeit mostly for employers, not employees), and speaks regularly at both local and national continuing legal education seminars, as is accurately reflected on his biography, which is located on the Internet at http://www.osattorneys.com/about_mark.html. Prior to starting Oberti Sullivan LLP in June 2010, Oberti spent more than twelve years at Seyfarth Shaw LLP, a national law firm specializing in labor and employment law. At the time he left Seyfarth Shaw, his hourly rate was already above $400 per hour, and other lawyers at Seyfarth Shaw's Houston office with similar or less levels of experience, knowledge, and skill charged clients hourly rate at or above $400 per hour. In addition, since starting Oberti Sullivan LLP, Oberti has charged numerous clients - both employers and employees - rates of $400 or more. Accordingly, his hourly rate on this case is reasonable.

Ed Sullivan's hourly rate of $375.00 is also reasonable. Sullivan has practiced since 1997, is Board Certified in Labor and Employment law, has handled hundreds of employment cases (albeit mostly for employers, not employees), and has spoken at many continuing legal education seminars, as is accurately reflected on his biography, which is located on the Internet at http://www.osattorneys.com/about_ed.html. Prior to starting Oberti Sullivan LLP in June 2010, Sullivan spent approximately eight years at Seyfarth Shaw LLP. At the time he left Seyfarth Shaw, his hourly rate was $375 per hour, and other lawyers at Seyfarth Shaw's Houston office with similar or less levels of experience, knowledge, and skill charged clients hourly rates at or above $375 per

hour. In addition, since starting Oberti Sullivan LLP, Sullivan has charged numerous clients - both employers and employees - rates of $375 or more. Accordingly, his hourly rate on this case is reasonable.

Finally, Matt Yezierski's hourly rate of $175 per hour is reasonable. Yezierski graduated from law school in 2011. Yezierski is a competent and capable Associate lawyer, and big firms in Houston routinely charge more for a lawyer of his experience, knowledge, and skill. His biography is located on the Internet at http://www.osattorneys.com/about_matt.html.

Defendants argue that Plaintiff's request for attorney's fees is unreasonable. (Instrument No. 60). First, Defendants argue that Plaintiff should not be awarded attorney's fees for work performed at the unemployment compensation hearing before the Texas Workforce Commission. (Instrument No. 60 at 5-6). Second, Defendants argue that Plaintiff's counsel spent an unreasonable time drafting certain documents filed in the case and also billed for work that should be have been performed by non-attorneys. (Instrument No. 60 at 6-9). Finally, Defendants argue that some of the time entries Plaintiff lists do not make sense in the context of the case. (Instrument No. 60 at 10). Plaintiff concedes that one five-hour entry was mistakenly billed to this case, and the Court has removed this time entry from the fee award. (Instrument No. 61 at 7). Plaintiff's counsel claims that the rest of its work was reasonable. (Instrument No. 61).

Applying the *Johnson* factors to the claims in this case, the Court finds that Plaintiff kept detailed, contemporaneous accounts of the time and expenses devoted to the preparation and trial of this case. The services for which Plaintiff's counsel seeks compensation were performed with a high level of skill and were reasonable and necessary for the preparation and trial of plaintiff's case. However, the Court has excluded post-trial fees related to editing the motion for entry of judgment, revising the post-trial brief, and reviewing Plaintiff's response to Defendants' motion for judgment

as a matter of law. The Court has determined that it was reasonable for Oberti to spend only seven hours responding to Defendants' renewed motion for judgment as a matter of law and two hours responding to Defendants' objections to the fee award. The Court has reduced the fee award accordingly.

The Court further finds that the hourly rates billed by the firm were in accordance with the customary fees for work of comparable quality in the Houston legal community and that they were fair and reasonable. The Court also finds the expenses incurred by Plaintiff's counsel to have been reasonable and necessary for the preparation and trial of this case. In addition to the foregoing considerations relating to reasonable and necessary professional services, levels of skill, and customary billing rates, the Court has analyzed the remaining lodestar factors outlined in *Johnson*. The Court finds that the affidavits of the Plaintiff's counsel support the award of fees in that the services were compensable under the law, and that the results obtained were favorable to the Plaintiff and were preferable to any compromise proposed prior to trial and that the preoccupation with this case precluded involvement by all attorneys concerned with other business.

Accordingly, pursuant to the applicable law, the Court finds that the following fees, hours and expenses form a reasonable basis for an award of fees and costs for preparation and trial of this case:

//

| Timekeeper | Task | Hours | Rate | Total |
|---|---|---|---|---|
| M.J.O. | Meetings, research, review, interview, conferences, correspondence, attend trial, post-trial briefing | 352.8 | $400 | $141,120 |

| E.S. | Revisions, correspondence, research, analysis | 12.8 | $375 | $4,800 |
|---|---|---|---|---|
| M.Y. | Review, attend depositions, analysis, set up and attendance at trial | 20 | $175 | $3,500 |
| **Expenses and Costs** | | | | $8,965.64 |
| TOTAL | | | | $158,385.64 |

## V.

Plaintiff has requested prejudgment interest on the back-pay and benefits award. (Instrument No. 57 at 21). However, the Fifth Circuit has held that "[i]n an ADEA case where liquidated damages are awarded, a court may not award prejudgment interest on either the backpay or the liquidated damage award." *McCann v. Tex. City Refining, Inc.*, 984 F.2d 667, 673 (5th Cir.1993). Furthermore, the Fifth Circuit has recently held that the district court did not abuse its discretion in denying prejudgment interest under the TCHRA when the jury awarded exemplary damages. *Miller v. Raytheon Co.*, 716 F.3d 138, 148 (5th Cir. 2013) (citing *McCann*, 984 F.2d at 673); *see also Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) ("The Legislature intended to correlate state law with federal law in employment discrimination cases when it enacted the TCHRA.") Because the Court is entering judgment in favor of Plaintiff that includes exemplary damages, it declines to award prejudgment interest.

The Court awards postjudgment interest pursuant to 28 U.S.C. § 1961(a), which provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." *Id.* Postjudgment interest is entered at a rate "equal to the weekly 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of the judgment," *id.*, which for the week preceding this judgment was 0.15%.

## VI.

Based on the verdict of the jury, the Court's Order on Defendants' Renewed Motion for Judgment as a Matter of Law, Alternative Motion for New Trial, Alternative Motion to Amend Judgment, and the Court's above rulings on front pay and attorney's fees and costs, the Court **ENTERS** the following judgment:

Judgment is **GRANTED** in favor of Plaintiff Nancy Robertson in the amount of (1) $100,705.15, which reflects a deduction of the jury's award, as requested by Plaintiff, for back pay and benefits; (2) $300,000.00 total for the combined amount of compensatory damages for past pain and suffering and mental anguish and exemplary damages, which reflects a deduction of the jury's award, as requested by Plaintiff, reflecting the state law cap on such awards; and (3) $91,150.00 in front pay.

It is FURTHER ORDERED that Plaintiff recover from Defendants her legal fees, costs, and expenses incurred in the preparation and trial of this case in the amount of $158,385.64.

It is FURTHER ORDERED that Plaintiff shall postjudgment interest on the above in the amount of 0.15% per annum, from the date of the judgment until fully paid.

**THIS IS A FINAL JUDGMENT.**

The Clerk shall enter this Order and provide a copy to all parties.

SIGNED on this the 18th day of July, 2013, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**